IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER CROMARTIE, JR., )
 )
   Plaintiff, )
 )
  v. )  1:17CV980
 )
NORTH CAROLINA DEPARTMENT OF )
SAFETY, et al., )
 )
   Defendants. )

<u>MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE</u>

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff Christopher

Cromartie, Jr., an inmate in the North Carolina Department of Correction.  His central

allegation in this case is that certain corrections officers, who are included as Defendants,

assaulted him without cause.  He also contends that other personnel attempted to keep him

from pursuing the matter or were involved in the confiscation or loss of his property.  Plaintiff

names a number of corrections officers, other staff, and administrators as Defendants in this

case.

   Currently pending before the Court are several motions filed by the Parties.

Specifically, Defendants Travis Bridges, William Bullard, Ronald Covington, Jerry Ingram, Jr.,

Michael Johnston, Dean Locklear, Pauletta Pierce, Katy Poole, Shanice Smith, and Lt. Windley

filed a Motion for Summary Judgment [Doc. #105], Defendant North Carolina Department

of Public Safety (NCDPS) filed a Motion to Dismiss [Doc. #108], and Plaintiff filed a Motion

for Relief [Doc. #115], Motion for a Ruling [Doc. #117], "Motion of Responses to Court

Order <u>Date</u>: March 20th, 2020" [Doc. #118], and Motion [Doc. #120] regarding a change of address.

## I. Non-dispositive Motions

Turning first to Plaintiff's non-dispositive motions, Plaintiff's Motion for Relief requests that he prevail on all pending motions because Defendants have not allowed him to view certain documents that are in evidence. He also asks that the Court order that he be allowed to view video footage filed as an exhibit by Defendants in support of their Motion for Summary Judgment. Plaintiff's Motion is conclusory and unclear as to which documents he has not been able to see. Further, Defendants filed a Response [Doc. #119] stating that counsel would work with the staff at the prison where Plaintiff was then housed to allow him to see the video evidence. Plaintiff acknowledges in his Motion of Responses that he did see the video evidence. Therefore, his Motion for Relief will be denied.

Plaintiff's next pending motion is a Motion for a Ruling in which Plaintiff requests a response and "summary disposition" of his motions in the case. It is not clear what Plaintiff is requesting in the Motion, but the entry of this Memorandum Opinion, Order, and Recommendation will address all pending motions in the present matter. Plaintiff's Motion seeking rulings will therefore be denied.

Plaintiff's "Motion of Responses" to this Court's order of March 20, 2020 seeks to re-raise matters regarding his housing and his proximity to the Defendants. Not only did the Court already reject such arguments, but Plaintiff has now moved to Tabor Correctional Institution where, so far as the record reflects, none of the Defendants are located. Therefore, the issue of his housing is moot. Unrelated to that request, Plaintiff also states that he did

review the video evidence presented by Defendants in this case and that it is accurate as far as it goes. However, he also maintains that there is much more video evidence not presented and requests that Defendants provide all of the video. Discovery in this matter closed more than a year ago and the Court will not re-open discovery at this time. However, as to the completeness of the videos, that may become an issue if this matter proceeds to trial. For now, however, Plaintiff's Motion will be denied.

Finally, Plaintiff filed what was docketed as a Motion regarding a change of address when he transferred to Tabor Correctional. In that document, he simply seeks to have the Court recognize his new address. This has already been done upon receipt of the new address. Therefore, this Motion is also moot and will be denied.

## II. NCDPS's Motion to Dismiss

The remaining motions pending before the Court are dispositive motions filed by the Defendants in the case. This first such Motion is a Motion to Dismiss filed by the NCDPS. In that Motion, NCDPS argues that the Court lacks subject matter jurisdiction and that, in any event, Plaintiff fails to state a claim upon which relief may be granted as to the NCDPS.

The first argument raised by the NCDPS is that it is not a "person" under § 1983 and, therefore, cannot be sued under that statute. This is correct. Neither a State nor its agencies are "persons" amenable to suit under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). This precludes suit against NCDPS, and also precludes official-capacity claims for damages against NCDPS officers and employees. Id. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Moreover, Plaintiff has not attempted to assert individual capacity claims against the head of NCDPS, and in his

3

Response [Doc. #114] to the other Defendants' Motion for Summary Judgment, Plaintiff admits that he named the NCDPS as a Defendant only because it employs the other Defendants. (Response at 20.) This would not support a basis for a claim § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). In the end, Plaintiff does not properly name the NCDPS as a Defendant or state a claim for relief against it or its head. The NCDPS's Motion to Dismiss should be granted.

### III. Motion For Summary Judgment

Plaintiff also named thirteen Defendants other than the NCDPS. One, Dr. Connie Locklear-Jones, was previously dismissed from the case. As will be discussed later, there may be service issues as to two of the Defendants, Jonathan Floyd and Erik A. Hooks. However, the other remaining Defendants, Travis Bridges, William Bullard, Ronald Covington, Jerry Ingram, Jr., Michael Johnston, Dean Locklear, Pauletta Pierce, Katy Poole, Shanice Smith, and Lt. Windley, have filed a joint Motion for Summary Judgment.

Summary judgment is appropriate when no genuine issue of material fact exists. A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of

4

pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County</u> <u>Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." <u>Id.</u> at 718-19 (citing <u>Anderson</u>, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. <u>See, e.g.</u>, <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994); <u>see also</u> <u>Anderson</u>, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials). Because Plaintiff's allegations vary considerably among Defendants or groups of Defendants, the Court will discuss them individually or in small groups.

### A. Sgt. Travis Bridges and Sgt. Michael Johnston

The central allegations of the Complaint pertain to events that involve primarily Defendants Travis Bridges and Michael Johnston. All other claims in the Complaint then grow from those original events. The Complaint alleges that on November 23, 2016, inmates upset about televisions being turned off banged on the windows of a control room in the area of the prison where Plaintiff was housed at Scotland Correctional Institution. (Complaint, Part 2 at 4.)[1] Defendant Bridges came to the pod and demanded that Plaintiff step out. (<u>Id.</u>) Plaintiff and other prisoners protested that Plaintiff was not the person banging on the control room, but Bridges demanded that Plaintiff place his hands on the glass and submit to a pat down. (<u>Id.</u>) The Complaint claims that Plaintiff did so and was patted down by Officer

---

[1] For the sake of simplicity, the page numbers referred to in pinpoint citations to the additional parts of the Complaint will be those listed in the footer appearing in the Court's Electronic Case Filing system.

5

Jonathan Floyd, who is also named as a Defendant. (Id.) Plaintiff claims that, after the pat down, he turned and told Bridges, "'I didn't do it,'" and that Bridges responded by "slamm[ing Plaintiff's] head into the glass and [saying] don't you flinch boy and submit to the cuffs." (Id.) Plaintiff responded that he was submitting, but also told Bridges he was being aggressive and acting like a "tough guy," to which Bridges responded by telling him to shut up. (Id. at 5.) Defendant Floyd then handcuffed Plaintiff. (Id.)

The Complaint alleges that Defendant Bridges next grabbed Plaintiff "by the arms tossing, pulling and yanking [him] aggressively" and causing Plaintiff to tell him to stop because of an injured leg. (Id.) Defendant Bridges allegedly then "placed [him] in a lock [used] when inmates refuse to cooperate with officers by pulling there [sic] arms up and bending the inmate over." (Id.) Plaintiff reports that Bridges had him in "half such hold with one arm," but that Defendant Michael Johnston then arrived and grabbed Plaintiff's opposite arm to bend Plaintiff completely over. (Id.) As Plaintiff continued to call them "tough guys," Bridges allegedly replied that they were "'going to see who's the tough guy then the cuffs come off.'" (Id.) Defendant Bridges then took Plaintiff to the segregation unit and told other officers to open the door to the clothing or linen closet. (Id. at 5-6.) Bridges took Plaintiff inside along with several other officers. (Id. at 6.)

The Complaint alleges that, upon their entry to the clothing room, Bridges pushed Plaintiff onto a table, where Defendant Johnston held him while Bridges took his handcuffs off. (Id.) They turned Plaintiff toward them and Plaintiff claims that he "looked [Bridges] in his face [for] what seemed too long," leading Bridges to slam him onto the table and choke him, stating "'who's tough now boy.'" (Id.) He released Plaintiff and told him to take off his

shirt, "but [Plaintiff] didn't move fast enough and SGT Johnston slammed [him] on the table and SGT Bridges ripped off [Plaintiff's] shirt." (Id.) Plaintiff attempted to get up, but Defendant Johnston allegedly choked him with both hands. (Id. at 6-7.) Plaintiff then invoked the name of Allah, leading Johnston to reply that "'nobody cares about that shit, take off your pants let['s see some cheeks.'" (Id. at 7.) When Plaintiff responded by ripping off the remainder of his shirt and dropping it to the floor, Bridges allegedly again slammed him on the table while Johnston ripped off his pants and Bridges choked him longer than before. (Id.) As Plaintiff continued to make religious statements and refer to Allah's will, Bridges allegedly stated "'he ain't trying to do nothing, I never knew a soft bitch ass Muslim.'" (Id.) At this point, an officer ordered Plaintiff to cough and squat, with officers allegedly keeping him in this position for 2-3 minutes. (Id.) When Plaintiff complained that he was being subjected to excessive force and sexually assaulted, Defendant Johnston allegedly told him to shut up. (Id.)

Officers began to provide Plaintiff with new clothes, but Defendant Bridges allegedly gave him pants that were too small. (Id. at 7-8.) When Plaintiff dropped them on the floor, he claims that Bridges slammed him onto the floor on his bad knee and that both Bridges and Johnston dropped their full weight onto his back using their knees before handcuffing him, handing him shorts, and commanding him to put them on. (Id. at 8.) When Plaintiff replied that he was still handcuffed, the officers allegedly laughed and told him to ask Allah to help him. Plaintiff responded, "'he will[,] he's always going to have triumph over the believers than the none [sic] believers.'" (Id.) Plaintiff then partially dressed and was taken to segregation. (Id.) Sometime after reaching segregation, Plaintiff encountered Defendant Shanice Smith with Defendant Bridges, who then went into an office. (Id. at 9.) Plaintiff asked Defendant

7

Smith why his property was packed and why he was staying in segregation. (Id.) She allegedly replied that "'her supervisor ordered her to . . . pack and bring [Plaintiff's] property.'" (Id.) Plaintiff then asked where the rest of his property was and she shrugged. (Id.) Bridges returned and Plaintiff allegedly asked him about his charges and the location of his property, prompting Bridges to reply that "wherever it is you didn't have it and I don't know about your charge yet[,] I'll figure it out when I come back." (Id. at 9-10.) When Plaintiff completed a form stating that not all of his property was accounted for, Bridges told him he was trying to be funny, snatched the form away, and left what property there was before exiting the unit. (Id. at 10.)

After this incident, Plaintiff attempted to file a report under the Prison Rape Elimination Act of 2003 (PREA) claiming that Bridges and Johnston sexually assaulted him. (Id.) He also allegedly attempted to seek medical treatment. (Id.) Plaintiff alleges generally that other Defendants and prison personnel thwarted these efforts. The Complaint also alleges that at some unidentified time, Defendant Johnston later maced Plaintiff in retaliation. (Id. at 17.) It does not provide any context for this allegation. Plaintiff also complains that he was not kept separate from Defendant Bridges per standard policy and his requests. (Id. at 18.)

In conjunction with their Motion for Summary Judgment, Defendants Bridges and Johnston filed their own declarations concerning the events described above, along with the declarations of several other officers who were present. According to Bridges's Declaration [Doc. #106, Ex. 1], on November 23, 2016, Bridges was standing on "Blue Unit," Plaintiff's housing unit, when he heard a "beating noise." (Id., ¶ 6.) He investigated and was told by the

8

control booth operator that Plaintiff was beating on the control room glass because he wanted the television channel changed and that he had threatened to kick the door. Bridges then located Plaintiff and ordered him to submit to handcuffs. (Id.) He describes Plaintiff as "verbally agitated," but reports that he did place his hands behind his back as ordered. (Id.) However, Bridges states that as he began to handcuff Plaintiff, Plaintiff turned around "very quickly and aggressively," causing Bridges to "take control of [Plaintiff's] arm" and again order him to submit. (Id.) He then was able to handcuff Plaintiff and began to escort him to the restrictive housing unit, without using any force beyond that which was necessary to hold onto Plaintiff. (Id.) Bridges denies ever slamming Plaintiff against glass, leaning him over, or otherwise using force against Plaintiff, who he describes as "verbally abusive and non-compliant." (Id., ¶ 10.) As for the search in the clothes closet, Bridges describes that as "routine" with no use of force required by any officer. (Id., ¶ 13.) He denies ever slamming Plaintiff on a table, choking him, or putting a knee in his back or that Plaintiff was ever sexually assaulted. (Id.) He also witnessed no use of force by Defendant Johnston. (Id.)

Defendant Johnston's Declaration [Doc. #106, Ex. 2] is similar except he describes himself as mostly an observer who helped Defendant Bridges in escorting Plaintiff to administrative housing. (Id., ¶¶ 6, 7.) He also states that he did not see Bridges treat Plaintiff as alleged in the Complaint and that no force was used in the clothes closet. (Id., ¶ 9.) The Declarations of prison officers German Soto [Doc. #106, Ex. 3], Jonathan Floyd [Doc. #106, Ex. 4], Jarrod Gholston [Doc. #106, Ex. 5], Daniel Hunt [Doc. #106, Ex. 6], and Brandon Heshinski [Doc. #106 Ex. 7] reiterate and support the version of events set out in Bridges's and Johnston's Declarations, i.e. that no more than the minimum amount of force required

9

was used to transport Plaintiff to the clothes closet and that no force at all was used in the closet during the strip search.

Plaintiff's central claim against Defendants Bridges and Johnston is that they used excessive force in handcuffing him, transporting him to the clothing closet, and strip searching him. The Eighth Amendment's prohibition against cruel and unusual punishment extends to the treatment of prisoners by prison officials. Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Ingraham v. Wright, 430 U.S. 651, 670 (1977) (internal citations and quotations omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Thus, the primary inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The Fourth Circuit has noted "four non-exclusive factors to assist courts in assessing whether an officer has acted with 'wantonness': (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts to temper the severity of a forceful response." Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (internal quotations omitted).

In this case, if events occurred as described by Defendants, there was no use of excessive force, as what little force was used was minimal and only what was sufficient to place Plaintiff in handcuffs and transport him to segregation. With respect to the events in the

10

clothing closet, as set out above, each of the officers state that Plaintiff was not assaulted in any way and that neither Bridges nor Johnston were required to use any force on Plaintiff in order to complete the strip search. Plaintiff, of course, presents a starkly different set of facts. In his Response, Plaintiff submitted his contentions as an affidavit under penalty of perjury (Response [Doc. #114] at 25), and he incorporates the details described in his prior signed statements submitted in this case, including his handwritten statement submitted with his Complaint. As set out above, that statement includes details regarding the force used to handcuff Plaintiff and escort him to segregation, as well as the alleged assaults in the clothing closet and the statements by Bridges during the interaction. Specifically, Plaintiff alleges that Bridges said, "I'm going to teach yall asses about beating on my damn windows," and then slammed Plaintiff's head into the glass. (Complaint, Part 2 at 4.) After Plaintiff was handcuffed, Plaintiff told Bridges that his leg was "messed up," but Bridges said he "didn't give a f---," and then placed Plaintiff in a lock by bending him over and pulling his arms up. (Id. at 5.) Plaintiff says that he called Bridges a "tough guy" or "real tough guy" several times, and Bridges said, "We'll see who's the tough guy when the cuffs come off." (Id.) Bridges then took Plaintiff to the clothing/linen closet and told other officers to open the door. (Id. at 5-6.) There is no dispute that Bridges and Johnston then took Plaintiff into the clothing closet, followed by 6-10 other officers, and there is no camera in that closet. According to Plaintiff, Bridges pushed Plaintiff over a table, Johnston then held him down and took off the handcuffs, they both stood him up, and then Bridges slammed him on the table and began choking him and said, "Who's tough now boy." (Id. at 6.) Plaintiff further states that when he didn't take his shirt off fast enough, Johnston slammed him on the table and Bridges ripped

11

off his shirt "gritting his teeth while doing so." (Id.)  When Plaintiff tried to get up, Johnston started choking him with both hands.  (Id. at 6-7.)  Plaintiff contends that they pulled him up after he stopped breathing, and Johnston said, "Who's tough now."  (Id. at 7.)  Plaintiff alleges that he made prayers or references to Allah and dropped his shirt on the floor, and Bridges slammed him on the table again and choked him longer than the other times.  (Id.)  Plaintiff states that after the strip search, he told them the pants he had been given were too small and dropped the pants on the floor.  (Id. at 8.)  According to Plaintiff, Bridges then slammed him on the floor on his bad knee, and when he tried to grab his knee, Bridges and Johnston dropped their knees in his back with the full force of their weight.  (Id.)  Plaintiff alleges that they cuffed his wrists, yanked him up, and Bridges yelled, "I told your stupid ass not to throw shit at me."  (Id.)  Plaintiff was ultimately taken to segregation.[2]  He contends that his knee was swollen and his back was injured as a result of this incident.  Plaintiff alleges that the force was applied without cause and only in response to his verbal protests.  He also alleges that comments from Bridges and Johnston show that the uses of force were intended to demonstrate who was a "tough guy" rather than to transport Plaintiff and search him for administrative segregation.  In addition, nothing that allegedly occurred in either Parties' rendition of the facts would have warranted choking Plaintiff with two hands, slamming him into anything, or dropping onto his back with knees.  Notably, Defendants contend that there was no use of force at any time while Plaintiff was in the clothing closet.  In this regard, as set

---

[2] Plaintiff wrote out a grievance a few days later, setting out these events and noting that after he was placed in segregation, another officer (Sgt Hunt) told Plaintiff that, "You are down here because Sgt Bridges can't control his temper or feelings.  You'll be out in a couple of hours," and further noting that Assistant Unit Manager Jacobs told Plaintiff that if he did not act out, he would only be there for 24 hours, to "give Sgt Bridges time to cool down without you on the unit."  (Grievance [Doc. #2-3 at 27, 30].)

12

out above, the affidavits submitted by Defendants do not contend that force was applied in the clothing closet as part of a good-faith effort to maintain or restore discipline, but instead the affidavits specifically assert that no force was required or used at all in the clothing closet. Defendants contend that Plaintiff's version of events should not be believed. These competing versions of events create a factual dispute requiring credibility determinations that must be made at trial and cannot be resolved on summary judgment. See Tolan v. Cotton, 572 U.S. 650 (2014); see also Buckmon v. Lasley, No. 0:19-CV-334, 2020 WL 4745560 (D.S.C. Aug. 14, 2020).[3]

In the Motion for Summary Judgment, Defendants point to any lack of injury to Plaintiff as a result of the incident. However, Plaintiff alleges that he did not receive a proper examination and that his injuries were ignored. Defendants do not present any medical records, and instead cite only to a grievance response reflecting that x-rays were "negative." Thus, the extent of Plaintiff's injuries is an unresolved, disputed issue. Moreover, uses of such force as choking Plaintiff and dropping onto his back with knees are the type of force that could easily cause significant pain without lasting injury. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). It is the nature of the force, rather than the extent of the injury, that is the relevant

---

[3] Defendants contend that Plaintiff's statements are blatantly contradicted by the record, citing to cases in which video evidence was available that contradicted one party's version of events. See Scott v. Harris, 550 U.S. 372 (2007). However, in the present case, it is undisputed that no video evidence exists from the clothing closet. Defendants have presented brief video clips of Plaintiff being escorted in the hallway, but have not presented any video of his initial encounter with Bridges, of the clothing closet, or of Plaintiff leaving the clothing closet. In sum, the video evidence presented here is sparse and does not support or contradict either side's version of events.

inquiry.  Id. at 38; see also Thompson v. Commonwealth of Virginia, 878 F.3d 89, 100-01 (4th Cir. 2017).

Given the disputed issues of material fact, Defendants' Motion for Summary Judgment should be denied as to Plaintiff's excessive force claim against Defendants Bridges and Johnston in their individual capacities.

Plaintiff also appears to raise other possible claims against Bridges and/or Johnston, but those claims do not fare as well.  Specifically, Plaintiff claims that they sexually assaulted him, that Bridges lost or took some of his personal property, and that Bridges filed a disciplinary infraction against Plaintiff based on retaliation.  He also states that Johnston maced him at some point as retaliation.  As to these claims, the Complaint is insufficient to allow them to proceed.

Turning first to the claim that Defendants sexually assaulted Plaintiff, Plaintiff simply makes that bald allegation without any supporting facts that, even if true, would constitute a sexual assault. What Plaintiff describes in the Complaint is a strip search prior to being taken to segregation.  The Complaint could be read to allege that officers kept him naked and squatting for somewhat longer than necessary to accomplish the search.  However, that conduct would not constitute a sexual assault.  Moreover, to the extent Plaintiff is attempting to bring a claim under the Prison Rape Elimination Act, there is no right to a private cause of action under the PREA or under § 1983 based on that statute.  Chapman v. Willis, No. 7:12-CV389, 2013 WL 2322947 at *4 (W.D. Va. May 28, 2013).  Instead, "[t]he PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue . . . .  The statute does not grant prisoners any specific rights." Id. (quoting

14

<u>Chinnici v. Edwards</u>, No. 1:07–cv–229, 2008 WL 3851294, at *3 (D. Vt. Aug.13, 2008)). Therefore, Plaintiff cannot proceed with that claim based on the allegations in the Complaint.

Plaintiff also claims that Defendant Bridges lost or took some of his personal property. This is again a completely conclusory allegation, with Plaintiff failing even to identify the property allegedly taken. Further, Plaintiff has an available remedy under state law and, therefore, may not raise a due process claim under § 1983. If he seeks to raise such a claim, he must pursue this allegation in state court, not in this Court through an action under § 1983. <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984); <u>Chamberlain v. Jordan</u>, No. 1:06CV73, 2006 WL 3386840, at *4 (M.D.N.C. Nov. 17, 2006) (unpublished). Prisoners in North Carolina may bring actions for conversion in the state courts based on any deprivation of property. <u>Wilkins v. Whitaker</u>, 714 F.2d 4, 6 (4th Cir. 1983).

As for the alleged acts of "retaliation," Plaintiff again fails to set out any facts that would support claims of retaliation. The claims are just bald statements without sufficient supporting facts. These allegations fail as a matter of law, because "vague and conclusory allegations are not sufficient" even to survive a motion to dismiss. <u>Doe v. Virginia Dep't of State Police</u>, 713 F.3d 745, 754 (4th Cir. 2013) (internal quotation marks omitted).

In sum, Plaintiff's claims against Defendants Bridges and Johnston should be dismissed, except for his claims of excessive force on November 23, 2016 in violation of the Eighth Amendment, and as to those excessive force claims only, the case will proceed to trial to resolve the genuine issues of material fact.

15

## B. Defendants Katy Poole and Dean Locklear

The next Defendant named in Plaintiff's Complaint is Katy Poole, the Superintendent of Scotland Correctional Institution. Plaintiff also names Dean Locklear, an Assistant Superintendent at Scotland Correctional, as a Defendant. The only allegation raised in the Complaint against Defendants Poole and Locklear is that Plaintiff wrote them letters concerning the above events and concerning his attempts to file a complaint under the PREA. (Complaint, Part 2 at 17.) As set out above, Plaintiff cannot maintain a claim against these Defendants based on their position as supervisors over the other Defendants who allegedly harmed him. There is also no constitutional duty to perform an investigation concerning Plaintiff's allegations related to the incident. Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002). As for the alleged interference with any grievance process or the filing of a complaint under the PREA, the Constitution affords no substantive due process right to a prison grievance procedure. Grieveson v. Anderson, 538 F.3d 763, 772 n.3 (7th Cir. 2008); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). As noted above, there is also no right to a private cause of action under the PREA or under § 1983 based on that statute. Chapman v. Willis, No. 7:12-CV389, 2013 WL 2322947 at *4 (W.D. Va. May 28, 2013). Plaintiff cannot demonstrate that any action or inaction by Defendants Katy Poole and Dean Locklear violated his federal rights. Therefore, their Motion for Summary Judgment should be granted.

Case 1:17-cv-00980-LCB-JEP   Document 121   Filed 08/21/20   Page 16 of 23

## C. Defendant Lieutenant Windley

The next Defendant named in the Complaint is a Defendant identified as Lieutenant Windley, who is described as a shift supervisor at Scotland Correctional. As Defendants correctly point out, the Complaint is devoid of any allegation against Defendant Windley. He also cannot be named simply on the basis of his status as a supervisor. Plaintiff states in his Response [Doc. #114] that Defendant Windley was present when threats were made against him by Defendant Bridges "verbally through a 3rd party whom is an incarcerated person." (Response at 5.) Plaintiff does not describe or explain the alleged threat at that point. However, later in the Response, he claims that Bridges, within Plaintiff's hearing, told another inmate that, "If you do NOT hurry, I am going to whip your ass as I did Cromartie." (Response at 9.) Even if Bridges made this statement and even if Windley overheard it, the statement was a threat toward another inmate, not Plaintiff. It is not clear how Windley overhearing that statement would support a constitutional claim by Plaintiff against Windley. Finally, Plaintiff claims that Defendant Windley knew of the assault against him by Bridges and Johnston, but did not report it. (Id.) However, this allegation is entirely conclusory and without any supporting facts. Moreover, Plaintiff does not establish that Defendant Windley had a constitutional duty to report whatever he knew or that he violated Plaintiff's rights by failing to report it. Due to the fact that Plaintiff himself reported the alleged assault, prison authorities were well aware of what both Plaintiff and the officers involved claimed happened. Plaintiff cannot maintain any claim against Windley and Windley's Motion for Summary Judgment should be granted.

Case 1:17-cv-00980-LCB-JEP   Document 121   Filed 08/21/20   Page 17 of 23

### D. Defendant Ronald Covington

Plaintiff's only allegation as to Defendant Ronald Covington is that when Plaintiff attempted to file a PREA complaint, Covington told him that he needed to toughen up and that he would be fine. (Complaint, Part 2 at 9.) Again, as stated above, Plaintiff has no private cause of action under the PREA or right to an investigation. Plaintiff also sets out no facts demonstrating that Covington had a federal statutory or constitutional duty to aid him in filing a PREA complaint. Summary judgment should also be granted in favor of Defendant Covington.

### E. Defendant Shanice Smith

Plaintiff's only allegation as to Defendant Smith is that she was somehow involved in the loss of his personal property. However, as discussed above, Plaintiff cannot maintain a due process claim under § 1983 based on the loss of his property, since he has an available remedy under state law. He must pursue any property claim, if at all, using the available state process. His claim against Defendant Smith in this Court under § 1983 should be dismissed.

### F. Defendant Jonathan Floyd

The next Defendant listed in the Complaint is Jonathan Floyd. There is some question as to whether Defendant Floyd, who has not entered an appearance in the case, was ever served. The last attempt at service occurred in August of 2019 when a Summons [Doc. #92] for Floyd was docketed as having been executed. That Summons is addressed to Floyd at Scotland Correctional and is shown as having been delivered by certified mail, but the attached receipt is not signed and is merely a print-out from the United States Postal Service tracking service showing only that the summons was delivered in Laurinburg, North Carolina on July

17, 2019.  There is no signature and nothing reflects who actually received the Summons. Therefore, it is not clear that Floyd ever received the Summons.

Rather than delve further into the matter of service on Floyd, the Court will simply discuss the allegations against him which, as is the case with many other Defendants, fail to state any claim on which relief may be granted, which allows for dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii).  The only allegations against Floyd in the Complaint are that he patted Plaintiff down and placed handcuffs on him at the beginning of the incident that led to the Complaint.  (Complaint, Part 2 at 4-5.)  Plaintiff does not claim that Defendant Floyd engaged in any assaultive behavior or excessive force.   At most, Floyd may have been present during Plaintiff's initial interaction with Bridges.  "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  Randall v. Prince George's County, Md., 302 F.3d 188, 204 (4th Cir. 2002).  Here, based on the allegations in the Complaint, Floyd was present, at most, for only two brief initial uses of force by Bridges, and Plaintiff does not specifically allege what Floyd observed or whether he had a reasonable opportunity to prevent the harm.  Based on these allegations, it does not appear that an officer in Floyd's place would have known that Bridges' two brief uses of force violated Plaintiff's rights at that time, and even if he did believe that Bridges applied excessive force, the occurrences were so brief and sudden that Floyd did not have any reasonable opportunity to intervene and prevent the alleged violation of Plaintiff's rights. Therefore, Plaintiff does not state any claim against Defendant Floyd and the claim against Floyd should be dismissed.

### G. Defendant William Bullard

The next named Defendant is William Bullard, who joins the Motion for Summary Judgment. In response to that Motion, Plaintiff actually agrees that Defendant Bullard should be dismissed form the case. (Response at 15.) Therefore, Defendant Bullard's Motion for Summary Judgment should be granted.

### H. Defendants Jerry Ingram, Jr., Pauletta Pierce, and Eric A. Hooks

The three remaining Defendants in the case are all named based on a connected set of incidents. According to the Complaint, Plaintiff, unhappy with the handling of the grievance procedures at Scotland Correctional, called the Office of Defendant Eric A. Hooks, who is the Secretary of the North Carolina Department of Public Safety.[4] (Complaint, Part 2 at 13.) He was transferred to Defendant Pauletta Pierce and explained to her his issues with the grievance process, medical treatment, the handling of his PREA complaint, and "thoughts of mental depression." (Id. at 13-14.) Defendant Pierce allegedly told him to have his family contact her about the situation. (Id. at 14.) She also asked how Plaintiff contacted her and he told her that he called from the wall phone in his prison and was transferred to her by Defendant Hooks's office. (Id.) Soon thereafter, officers searched Plaintiff's cell for a cellular telephone device, but Plaintiff insisted he used the regular prison telephone and told them to check his calls. (Id.) Thereafter, Defendant Ingram asked Plaintiff to sign a form restraining him from calling Defendant Pierce. (Id. at 16.) Plaintiff refused to sign it. (Id.) Plaintiff also had his sister call Pierce again with Plaintiff also on the line. (Id. at 16-17.) However, Pierce

---

[4] It appears from the docket that Defendant Hooks was never served, as a Summons [Doc #87] issued for him was returned unexecuted [Doc. #91]. However, like Defendant Floyd, there is no need to explore this or allow for a further attempt at service due to Plaintiff's failure to state a claim for relief as to Defendant Hooks.

20

told Plaintiff's sister to call back without Plaintiff on the line because she was not allowed to talk to inmates and then hung up. (Id. at 17.)

Based on the events set out above, Plaintiff does not state any viable claim against these Defendants. It appears that Plaintiff never even contacted Defendant Hooks, only his office, and that the office transferred him to Defendant Pierce. This did not violate his federal rights. As for Defendant Pierce, Plaintiff sets out no facts establishing a federal constitutional right to speak to her directly or, for that matter, at all. Therefore, she did not violate his rights by refusing to speak to him. Also, as set out above, Plaintiff has no federal constitutional right to an investigation of his claims or a grievance procedure. Finally, Defendant Ingram only asked Plaintiff to sign a form preventing him from contacting Defendant Pierce. Again, this did not somehow violate Plaintiff's rights and, in any event, Plaintiff refused to sign the form. No possible violation of his rights occurred. Defendants' Motion for Summary Judgment should be granted as to Defendants Ingram and Pierce, with Defendant Hooks being dismissed from the case based on Plaintiff's failure to state any claim against him upon which relief may be granted.

## IV. Conclusion

Based on the analysis set out above, all of Plaintiff's pending Motions will be denied. On the other hand, Defendant NCDPS's Motion to Dismiss should be granted. In addition, Plaintiff's claims against Floyd and Hooks should be dismissed for failure to state a claim upon which relief may be granted. Defendants' Motion for Summary Judgment should be granted as to the remaining claims and Defendants, except for Plaintiff's claims of excessive force against Defendants Travis Bridges and Michael Johnston. Those claims should be resolved at

21

trial in light of the genuine issues of material fact. The Court will recommend that the trial of these claims be stayed in light of the current limits on jury trials resulting from the COVID-19 pandemic, and the Parties should file status reports after 180 days with respect to whether the case would be ready to set for trial. The Court will attempt to procure pro bono counsel to represent Plaintiff on those claims going forward, in light of these Recommendations.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Relief [Doc. #115], Motion for Ruling [Doc. #117], Motion of Responses [Doc. #118], and Motion Regarding an Address Change [Doc. #120] are denied as set out above.

IT IS RECOMMENDED that Defendant North Carolina Department of Public Safety's Motion to Dismiss [Doc. #108] be granted.

IT IS FURTHER RECOMMENDED that Defendants Jonathan Floyd and Eric A. Hooks be dismissed from the case based on Plaintiff's failure to state a claim against them upon which relief may be granted.

IT IS FURTHER RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #105] be granted in its entirety as to Defendants William Bullard, Ronald Covington, Jerry Ingram, Jr., Dean Locklear, Pauletta Pierce, Katy Poole, Shanice Smith, and Lt. Windley, and that it be granted as to Defendants Travis Bridges and Michael Johnston as to all claims except as to Plaintiff's claim that they violated his rights through the use of excessive force on November 23, 2016, and that the Motion for Summary Judgment be denied as to Plaintiff's excessive force claims against Defendants Travis Bridges and Michael Johnston in their individual capacities in light of the genuine issues of material fact.

IT IS FURTHER RECOMMENDED that this case be STAYED in light of the current limits on jury trials resulting from the COVID-19 pandemic, and the Parties should file status reports after 180 days with respect to whether the case would be ready to set for trial.

This, the 21st day of August, 2020.

                                                     /s/ Joi Elizabeth Peake
                                                 United States Magistrate Judge